IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| UNITED STATES OF AMERICA, | Case No. 22-CR-223(4)(NEB/DTS) |
|---|---|
| Plaintiff, | |
| v. | **MOTION *IN LIMINE* NO. 1 TO PRECLUDE RULE 403(b) ARGUMENTS REGARDING UNSUPPORTED GANG AFFILIATION** |
| 4. ABDULKADIR NUR SALAH, | |
| Defendant. | |

Defendant Abdulkadir Nur Salah moves to preclude the Government from introducing baseless evidence and argument under Rule 404(b) prejudicially suggesting that Mr. Salah is somehow gang affiliated. Besides the fact that Mr. Salah has never been gang-affiliated—to the contrary he was an honor roll student and has a master's degree in management—the government's prejudicial suggestions have no place at this trial.

Without any legal or evidentiary support, the prosecutors say they may offer a disturbing video depicting an unidentified individual—a person with no connection to Mr. Salah or this case—engaging in a mock-execution and pistol-whipping of a crying victim in a bathtub. The prosecution also claims it will argue that Mr. Salah's use of innocuous slang in text messages—the same type of slang that every middle-school student hears every day in popular music—allegedly makes him a gang member.

But this is not one of the United States' numerous RICO prosecutions. The prosecution's surprising attempt to interject irrelevant gang rhetoric and violence into this white-collar fraud trial is one of those "foul blows" fundamentally at odds with all

defendants' right to a fair and impartial trial. *Berger v. United States*, 295 U.S. 78, 88 (1935) (government "may strike hard blows" but not "foul ones.") The Court should repudiate the government's unfounded strategy.

## I.  BACKGROUND.

On Monday, January 6, 2025, the United States served the defendants with its lengthy 404(b) disclosure, including the following baseless suggestion of gang affiliation (which is reproduced below in its totality):

> 6. The government may seek to introduce evidence of defendant Salim Said and Abdulkadir Nur Salah's involvement in a street gang.
>
> On December 15, 2020, Abdulkadir Salah, who went by the nickname "fish," sent a text message to Salim Said in which Salah said he was "gonna fuck this [guy] up." In a second text message, Salah explained that "Safari will no longer pay this [guy]."
>
>  
>
> During the investigation, the government recovered from Salim Said's Google drive a video taken on the same date as this text exchange. In the video, the two men hold another man at gunpoint over a bathtub in what appears to be a bathroom in a typical Minneapolis home. As they do so, they accuse the victim of treason and the victim begs for his life. At one point in the video, the victim is pistol whipped with a handgun, leaving his face bloodied. The men then tell the victim to "clean himself up" as the victim cries out in the bathtub.

> The men involved in the assault have been identified as members of the same street gang with which defendants Salim Said and Abdulkadir Nur Salah are associated.

The prosecution's disclosure did not identify any purpose for this alleged 404(b) evidence or attempt to address the obvious unfair prejudice of such evidence under Rule 403. The disclosure did not provide a Bates number or any metadata for the text message or the video.

On January 7, 2025, with Defendant Salim Said's counsel, Mr. Colich, present in person at the prosecutor's office, and the undersigned counsel for Mr. Salah on the phone, the defense asked the prosecution to reconsider this 404(b) gang-disclosure because it was unfairly prejudicial, irrelevant, and because there was no evidence that either Defendant was gang affiliated. Prosecutors told the defense that they had more than one FBI 302 that purportedly linked the Defendants to a gang, and that the individual depicted in the video (who remains completely unidentified) was part of the same gang.

When asked to disclose any such FBI 302s to the defense, the prosecutor stated that he could not disclose the reports because he had witness security concerns. After noting that there was no basis for any witness security concerns, defense counsel noted that the prosecution had not even made any reports available for inspection at his office under his supervision. The prosecution ultimately agreed to make the reports available for inspection at the U.S. Attorney's Office. Despite the fact that Mr. Colich was present at the U.S. Attorney's Office at that time, counsel was not provided any 302s to review and the government did not propose an alternative time for a review.

On the evening of January 7, the defense counsel memorialized its request to review any 302s supporting the prosecution's claim of gang affiliation at the prosecutor's office on January 8, 2025.

On January 8, 2025, the undersigned again emailed the prosecutors asking to review the alleged 302s establishing any gang affiliation, because the prosecution had not confirmed a meeting to allow this review. The prosecutor responded to that email attaching a copy of the video referenced in the 404(b) disclosure, without any Bates number or attribution information and without the video's original metadata. The prosecutor's email stated, "I believe the agent is still writing up the 302 of the interview. We'll let you know when we have it in hand."

Despite the defense's request, the prosecutor did not advise when the defense could review the alleged 302s that formed the basis of the government's 404(b) disclosure. Instead, the prosecutor's email confirmed that, contrary to the government's representation the day before, there apparently were *not* any FBI 302s supporting the government's allegations that the defendants are gang members.

In response to that email, the undersigned attorney emailed to ask for the Bates number of the video and information on where that video was located in the United States's numerous and voluminous disclosures. The email also memorialized that after the prosecution initially told the defense that there were 302s supporting alleged gang affiliation, the prosecution had now implicitly admitted that was not true. The undersigned attorney again requested that the government consider retracting this 404(b) disclosure.

4

To date, the prosecution has not responded to that email. The prosecution has not identified a Bates number for the video, has not provided the video's metadata, and has supplied no basis for its assertion that the defendants are allegedly gang members. The prosecution has not disputed the defense's understanding that there were no 302s or other documentary evidence (disclosed or undisclosed) supporting the United States' 404(b) disclosure.

The defense was ultimately able to find the video in the United States' production with the Bates label EML-00723125, an exercise that sidetracked defense counsel from preparing for trial. A review of that file demonstrates that its metadata was apparently removed from the file through the government's discovery processing procedure. In other words, the file was not produced in the format that it was received by the government from Google. The file was produced without any file path information (allegedly within Google Drive), without its original date, without any location metadata, and without any evidence of when or where it was taken, who took it, or who is depicted.

On January 9, 2025, the undersigned notified the prosecutors that they had apparently not produced the standard attribution and access information that Google produces in response to all government search warrants. This attribution and access information does not seem to have been produced for approximately 50 different Google accounts, including the accounts that stored many if not most of the emails listed on the Government's preliminary exhibit list.

Late in the evening on January 9, the prosecution provided one copy of the attribution information for one of the Google accounts, which it had not previously

5

produced. The Government had not produced these files even though they were received by the government prior to the Indictment in this case. As of the time of filing this motion, the United States has not yet committed to providing the defense with everything it received from Google in response to search warrants consistent with its Rule 16 obligations.

## II.   ARGUMENT

**A.   The Government Failed to Identify Any Purpose for Its Alleged Gang Argument.**

Even if the short, vague text message exchange and unattributed video the government relies on could establish the defendants' alleged gang affiliations—which they cannot—the government's disclosure articulates no proffered purpose for seeking to establish that affiliation, which is obviously irrelevant to the allegations of wire fraud and money laundering in this case. The government's disclosure is facially inadequate, and the government should be precluded from introducing any evidence or argument on this issue on that basis alone. *See United States v. Cotton*, 823 F.3d 430, 434 (8th Cir. 2016) (government "must identify the permissible non-propensity purpose for the evidence, and must articulate the relationship between the [evidence] and a material issue in the case" and may not "[m]ere[ly] recit[e] the Rule without an accompanying case-specific analysis"); Rule 404(b)(3) ("the prosecutor must: (A) provide reasonable notice…so that the defendant has a fair opportunity to meet it; [and] (B) *articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose*[.]") (emphasis added).

6

It is far too late for the government to try to come up with a basis for this plainly irrelevant argument for the first time. Having failed to properly notice this "evidence" as required, the government should not be permitted to make any late supplemental disclosures.

And although the Court should not give the United States another opportunity now to try to explain itself for the first time, the prosecution would be unable to do so even if it tried. Evidence of alleged gang affiliation could not demonstrate any of the permitted uses under Rule 404(b) in this white-collar case.

Such evidence could only be used for an improper purpose—as a transparent, baseless dog-whistle suggesting two Black defendants are allegedly tied to an unspecified gang. The Court should reject this unnecessary attempt by the prosecution to prejudice the defendants.

**B.     Evidence of Alleged Gang Affiliation is Irrelevant and Dissimilar to Every Material Issue.**

Evidence is admissible pursuant to Rule 404(b) only if "it (1) is relevant to a material issue, (2) is similar in kind and close in time to the crime charged, (3) is proven by a preponderance of the evidence, and (4) does not have a prejudicial effect that substantially outweighs the probative value." *United States v. Ali*, 616 F.3d 745, 752–53 (8th Cir. 2010).

Here, the government has not even attempted to explain the relevance of completely unspecified alleged gang affiliation in this wire fraud case. Moreover, alleged gang affiliation is completely dissimilar in kind to wire fraud.

7

Indeed, the government's suggested argument is so far-fetched, it's difficult to even speculate about any rational or logical basis for trying to offer it. The evidence should be excluded as irrelevant and dissimilar to the charged offenses.

C.  **The Government Did Not Have Any Basis to Insinuate Gang Affiliation When They Issued Their Rule 404(b) Notice and Cannot Prove Any Alleged Gang Affiliation by a Preponderance.**

The government's alleged "evidence" of gang affiliation and argument to that effect should also be excluded because the United States apparently made this paper-thin 404(b) disclosure without any evidence—and no law enforcement reports suggesting gang affiliation. Accordingly, the United States cannot prove the existence of any evidence by a preponderance.

Further, the alleged text message does not suggest gang affiliation. It merely reflects the use of slang language among two individuals who know each other well. It is unclear if the government is offended with the use of the "F-word" or perhaps with one Black man's use of the "N-word" to another Black man. Regardless, the prosecution is not responsible for policing language or culture. The prosecution's cursory disclosure raises concerns that it is drawing improper and unsupported inferences based on this innocuous text message.

Further, the United States either did not consider or omit the context of the text messages in its Rule 404(b) disclosure. The relevant context is reproduced below:

8

**Fish (+16122323417)** ✓ Received 12/13/2020 11:53:15.000 PM
The guy wants to get paid

**Fish (+16122323417)** ✓ Received 12/14/2020 4:34:11.000 PM
Call me ASAP

**Fish (+16122323417)** ✓ Received 12/15/2020 5:35:11.000 PM
Tell that nigga to post safari again

**Fish (+16122323417)** ✓ Received 12/15/2020 5:35:18.000 PM
Abti Liban

**Fish (+16122323417)** ✓ Received 12/15/2020 8:13:15.000 PM
I'm gonna fuck this nigga up

**Fish (+16122323417)** ✓ Received 12/15/2020 8:15:04.000 PM
Safari will no longer pay this nigga

**Local User <00008020-001175983ED1002E_files_full.zip>** ↗ Sent 12/15/2020 10:59:26.000 PM
I will call you back

**Fish (+16122323417)** ✓ Received 12/15/2020 10:59:42.000 PM
We have a meeting

**Local User <00008020-001175983ED1002E_files_full.zip>** ↗ Sent 12/15/2020 10:59:48.000 PM
6pm

**Fish (+16122323417)** ✓ Received 12/16/2020 3:18:32.000 AM
Calmm km me when you driving home

9

The context demonstrates that this was a conversation about "Abti Liban," (i.e. "Uncle Liban") a social media influencer that was responsible for getting the word out (i.e. "posting" on social media) that people could pick up food from Safari Restaurant during the pandemic. With their full context, the text messages clearly show that Mr. Salah was frustrated that Liban should be posting more about Safari's food to get the word out. Nothing about these texts—other than the government's baseless attempt to connect them to an unrelated video that doesn't depict either participant in the text exchange—suggests any gang affiliation. While Mr. Salah may have shown a mild amount of frustration, his language is being taken out of context by the prosecution to baselessly suggest violence and gang involvement.

Additionally, the United States—and based on the evidence disclosed to date—*cannot* establish any details about the inflammatory and violent video it says it might try to offer at trial. Other than stating it was allegedly recovered on Google Drive, the United States cannot establish when the video was taken, who is in it, where it was taken, who took it, what its context is, how it arrived on the Google Drive, or whether it was embedded in other media or web content before it was saved. It is not even clear if this video was taken in this country. In short, the United States knows *nothing* about this video other than it is violent and could cause juror confusion and prejudice the defendants.

For all the government knows, this video could be a social media or web video that was saved to a Google drive by someone who saw the video.[1]  In that case, the government would be accusing someone of gang affiliation based on what social media content they chose to watch and save on a private device.

For all these reasons, the Court should conclude that the government cannot substantiate this baseless gang argument.

### D.     The Proffered Evidence is Inadmissible Under Rule 403.

Last, the government's proffered evidence and argument must be excluded under Rule 403 to preserve the defendants' right to a fair trial.  The proffered evidence and argument hits virtually all the bases requiring exclusion under Rule 403: "unfair prejudice, confusing the issues, misleading the jury, undue delay, [and] wasting time."

Indeed, other than inciting unfair prejudice, misleading the jury, and confusing the issues, it is difficult to identify any appropriate reason the prosecution should be allowed to baselessly cast two Black defendants as alleged violent gang members in this wire fraud case.  Accusing a defendant of random violence would be unfairly prejudicial even

---

[1] And there is some basis to believe that the video may be just that—a social media video saved by someone who saw it.  The aggressor in the video seems to be repeatedly saying the name "Dolal" to the person videotaping the incident.  That could refer to "Dolal Idd," a Somali man who was fatally shot by Minneapolis Police Officers on December 30, 2020.  *See* https://www.nytimes.com/2021/01/02/us/minneapolis-police-shooting-raid-dolal-idd.html.  Following the killing, there was public attention on the idea that "Dolal Idd" was himself allegedly a violent person.  This video may have been one of the videos circulated publicly suggesting that Idd was involved in violence.  *Cf.* https://sahanjournal.com/public-safety/family-dolal-idd-killing-minneapolis-police/

if the government did have an evidentiary basis to prove it. There should be no question that the United States position is completely unsupported.

The Court should reject the United States proffered evidence and argument under Rule 403 and 404(b). *United States v. Maxwell*, 643 F.3d 1096, 1102 (8th Cir. 2011) ("In cases in which a defendant argues that both rules prohibit the admission of certain evidence, there is no practical difference whether we analyze the Rule 403 claim separately or instead as a subpart of Rule 404(b)," and the defendant preserves his claim under both rules).

Dated:  January 10, 2025                                **GREENE ESPEL PLLP**

*s/ Surya Saxena*
Surya Saxena, Reg. No. 0339465
Nicholas Scheiner, Reg. No. 0402470
222 S. Ninth Street, Suite 2200
Minneapolis, MN  55402
ssaxena@greeneespel.com
nscheiner@greeneespel.com
(612) 373-0830

Attorneys for Defendant Abdulkadir Nur Salah