IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>4. ABDULKADIR NUR SALAH,<br><br>Defendant. | Case No. 22-CR-223(4)(NEB/DTS)<br><br>**MOTION TO MODIFY PRELIMINARY JURY INSTRUCTIONS** |

At the pretrial conference on Thursday, January 16, 2025, the Court requested that the parties submit their proposed amendments to the Court's proposed preliminary jury instructions. Defendant moves to revise the Court's preliminary jury instructions as follows.

**I.   Federal Programs Bribery.**

   **A.   Proposed Revisions to The Court's Proposed Preliminary Instruction.**

The Court's instruction, with Defendant's proposed revisions in tracked changes (proposed additions in **bold**, proposed deletions in ~~strikethrough~~), is reproduced below.

> **Federal Programs Bribery (Giving or Agreeing to Give a Bribe), has four elements:**
>
> *One*, Aimee Marie Bock or Abdikerm Eidleh (depending on the count you are considering), were agents of Feeding Our Future;
>
> *Two*, **before Bock or Eidleh sponsored the defendant's participation in the Federal Child Nutrition Program, the defendant and either Bock or Eidleh corruptly reached an agreement[1] under which the defendant**

---

[1] "[B]ribery requires that the official have a corrupt state of mind and accept (or agree to accept) the payment intending to be influenced in the official act." *Snyder v. United*

**corruptly gave or agreed to give**[2] **money or something of value to Bock or Eidleh in connection with that sponsorship;**

~~before Feeding Our Future sponsored the defendant's participation in the Federal Child Nutrition Program, the defendant corruptly offered, gave, or agreed to give money or something of value to Bock or Eidleh in connection with that sponsorship;~~

*Three*, the ~~transaction~~ **sponsorship of the defendant's participation in the Federal Child Nutrition Program** involved something of value of $5,000 or more; and

*Four*, Feeding Our Future received benefits in excess of $10,000, pursuant to the Federal Child Nutrition Program, within a one-year period beginning no earlier than twelve months before the commission of the offense or that ends no later than twelve months after the commission of the offense.

**B.     Basis for Proposed Revision.**

The *Snyder* Court made clear that under 18 U.S.C. § 666, a payment made after an official act is a non-criminal gratuity, unless the payment is made pursuant to a preexisting agreement to influence the official act. 603 U.S. 1. In other words, where a payment is made after an official act, there must be proof beyond a reasonable doubt of an agreement to influence the official act that preceded the official act itself. A preexisting agreement between the alleged bribe-giver and receiver is critical, because any agreement, payment, or offer to pay a bribe made *after* the official act necessarily cannot have a corrupting influence on the official act. *Snyder*, 603 U.S. 1, 6 ("Gratuities

---

*States*, 603 U.S. 1, 11 (2024). Accordingly, the instruction should include the requirement of a corrupt agreement, not merely an offer to make a payment.

[2] The Indictment does not allege that any offer of a bribe was made prior to any official act, which is what would be required under Snyder to prevent a conviction based on a gratuity. As a result, there is no basis to include the "offer" language in the jury instruction.

after the official act are not the same as bribes before the official act. After all, unlike gratuities, bribes can corrupt the official act—meaning that the official takes the act for private gain, not for the public good.")

Accordingly, the Court's preliminary instruction should be amended to make clear that the United States must prove both an agreement preceding an identifiable official act, and that the defendant corruptly paid a bribe consistent with that agreement at some later time. *Snyder v. United States*, 603 U.S. 1 (2024); *United States v. Macrina*, 109 F.4th 1341, 1351 (11th Cir. 2024) ("[T]he [*Snyder*] Court made clear that the key difference between a gratuity and a bribe is whether the official and the payer agreed to a payment for the official act. If there were an agreement before the official act was complete to make a payment for that act, the payment received after the act could still be considered a bribe.") (citation omitted); *United States v. Bock*, 22-cr-223 NEB-DTS (ECF No. 402) at 15 ("To charge federal programs bribery post-*Snyder*, the bribe-giver and the bribe-taker must have come to their quid pro quo agreement before the official act. *Snyder*, 603 U.S. at 6."); *Id.* at 18 ("At trial, the Government will need to prove beyond a reasonable doubt that defendants formed a quid pro quo agreement before obtaining Feeding Our Future's sponsorship.").

The Court should also remove the references to "offer[ing]" or "g[iving]" something of value in element two, because the Indictment does not allege that there was any such offer or payment by any defendant before any specified official act undertaken by Bock or Eidleh. (*See, e.g.* ECF No. 1, Indictment at ¶¶ 31, 180.) To the contrary, the Indictment alleges that Feeding our Future's employees *solicited* bribes (as part of an

3

alleged "pay-to-play" arrangement), and that other defendants allegedly *agreed* to pay them. (*Id.*) Accordingly, it would be a significant variance from the Indictment for the United States to now suggest that any defendant made any offer or payment before an official act. The United States has not identified any evidence of any such preceding offer or payment to date. Rather, as the government seemed to concede both prior to and at the pretrial hearing with the Court, the only way the United States can prove a bribe under the Indictment as pleaded is by proving an agreement to corrupt or influence a specified official act made before that act was taken.

Removal of the "offered" and "gave" language from the proposed instruction, as reflected in the Defendant's proposal, is therefore necessary to conform the instruction to the Indictment and *Snyder*. The United States had every opportunity to supersede the Indictment after *Snyder,* but it chose not to. The Court should hold the government to the Indictment as pleaded and foreclose any attempt to now suggest for the first time that any offer or payment was made before any identifiable official act.

The Court should also clarify that the "transaction" at issue in element number three is in fact the sponsorship of the defendant's participation in the Federal Child Nutrition Program. This is necessary to avoid any misunderstanding that the amount of the alleged bribe or payment satisfies the $5000 requirement. Section 666(a)(2) makes clear that the alleged bribe can be valued at any amount, but that the transaction (e.g. a government contract) that was entered into as the result of a corrupted official act must be valued at $5000 or more.

4

### C. The Court Should Reject the United States' Proposed Revisions.

The Court should also reject the government's suggested revision defining the official act as "sponsoring or continuing to sponsor the defendant's and/or his co-conspirators' fraudulent participation in the Federal Child Nutrition program." The government's proposed "continuing to sponsor" language—besides being inconsistent with the statutory language and *Snyder*—would make it impossible for the jury, the Court, or the defense to identify which official act was allegedly corrupted or influenced by the alleged bribe.

"Continuing to sponsor" a defendant's participation in the Federal Child Nutrition Program could be construed to include a wide array of nominal activities (such as reviewing an email, receiving site documentation, or conducting a monitoring visit) or even complete inaction (i.e. failing to terminate a sponsorship at any time). Such an overbroad and unsupported construction of the statute and the Indictment would make it impossible for the Court, the defense, or the jury to identify which specific official act was allegedly influenced by any alleged agreement to pay a bribe.

This lack of clarity would create a host of problems with any bribery conviction that the jury may reach. Without a specific identification of the official act at issue and its timing with respect to any alleged agreement or payment, the jury would have no way to determine whether the alleged agreement to influence the official act preceded the act itself, as required under *Snyder* to support a bribery conviction. The result would be a significant risk that the jury would improperly convict the Defendants of a non-criminal gratuity. Indeed, without specifically identified alleged official acts at issue, the

5

Defendants and the Court would be unable to determine after trial whether any bribery convictions comported with *Snyder*.  Additionally, without clarity regarding the specific official act at issue, the United States' revision would risk a lack of unanimity on any bribery verdict.  Further, such a lack of clarity on which official act was allegedly influenced would prevent the jury from appropriately assessing the third and fourth elements of Federal Programs Bribery, which require a focus on a specific official decision that resulted in a specific business transaction being executed.  *See* 18 U.S.C. § 666.

The Court should also reject the United States' suggestion of inserting the concepts of "coconspirators" and "fraud" into this instruction.  The United States' proposed bribery instruction suggests describing the official act as "sponsoring or continuing to sponsor the defendant's *and/or his co-conspirators' fraudulent* participation in the Federal Child Nutrition program." ECF No. 419 at pp. 7-8 (emphasis added).  While the defense agrees that an alleged bribe can be designed to influence a decision to sponsor *any* person's participation in the Federal Child Nutrition Program, there is no cause to incorporate the concept of coconspirators into the instruction.  This is a case with three charged conspiracies, one of which is allegedly to commit Federal Program Bribery.  Including the concept of a conspiracy into the Court's instruction regarding the Federal Programs Bribery substantive offense will only confuse the jury, and incorrectly suggest that the jury must combine its analysis of the conspiracy counts and the substantive counts.

The government's proposed reference to coconspirators emphasizes a particularly confusing aspect of the government's theory of prosecution in this case after *Snyder*. The government suggests that the defendants are guilty both of a conspiracy to commit Federal Programs Bribery (which requires an agreement) and also substantive bribery offenses (which, after *Snyder*, also require proof of an agreement where the payment is made after the official act). Thus, in this case, it is difficult to discern any difference between the elements of a conspiracy to commit bribery and bribery itself. Bootstrapping the concept of "coconspirators" into the substantive offense's elements merely highlights the Indictment's infirmities post-*Snyder*.

Similarly, the concept of "fraudulent participation" should not be confused with the separate bribery counts of the indictment. The Court will separately instruct the jury regarding the wire fraud charges, and there is no reason to further confuse matters by referencing the amorphous concept of "fraud" in this instruction.

## II.   Concealment Money Laundering.

The defense believes it is in agreement with the prosecution that the Court should revise its money laundering instructions in two ways. First, the Court should differentiate between the conspiracy to commit concealment money laundering (under 18 U.S.C. § 1956) and substantive counts charging violations of the spending statute (18 U.S.C. § 1957). As written, the Court's instruction incorrectly suggest that the charged conspiracy only alleges an agreement to violate Section 1957, which is incorrect.

Second, the Court should include the substantive elements of concealment money laundering, which is the object of the charged conspiracy.

Dated: January 25, 2025                    **GREENE ESPEL PLLP**

*s/ Surya Saxena*
Surya Saxena, Reg. No. 0339465
Nicholas Scheiner, Reg. No. 0402470
222 S. Ninth Street, Suite 2200
Minneapolis, MN 55402
ssaxena@greeneespel.com
nscheiner@greeneespel.com
(612) 373-0830

Attorneys for Defendant Abdulkadir Nur Salah