UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 22-223(4) (NEB/DTS)

UNITED STATES OF AMERICA,

        Plaintiff,                **PLEA AGREEMENT AND SENTENCING STIPULATIONS**

v.

ABDULKADIR NUR SALAH,

        Defendant.

The United States of America and the defendant Abdulkadir Nur Salah agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota. This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

    1.    **Charges**. The defendant agrees to plead guilty to Count 14 of the Indictment, which charges the defendant with wire fraud, in violation of Title 18, United States Code, Section 1343. The defendant fully understands the nature and elements of the crimes with which he has been charged. At the time of sentencing, the United States agrees to move to dismiss the remaining charges against him in the Indictment.

    2.    **Factual Basis**. The defendant is pleading guilty because he is in fact guilty of Count 14 of the Indictment. In pleading guilty, the defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to the United States Sentencing Guidelines:

1

From in or about 2020 through in or about January 2022, the defendant knowingly participated in a scheme to defraud the federal child nutrition program, a program designed to provide free meals to children in need. The defendant and his co-conspirators obtained and misappropriated millions of dollars in program funds that were intended as reimbursements for the cost of serving meals to children. The defendants exploited changes in the program intended to ensure underserved children received adequate nutrition during the Covid-19 pandemic. The defendants took advantage of the Covid-19 pandemic—and the resulting program changes—to enrich themselves by fraudulently misappropriating millions of dollars in federal child nutrition program funds.

The defendants opened an array of federal child nutrition program sites under the sponsorship of Feeding Our Future, including sites in Minneapolis, St. Paul, Willmar, Mankato, St. Cloud, Waite Park, and Rochester. The defendants claimed to be serving meals to tens of thousands of children each day throughout the state of Minnesota, for which they fraudulently claimed and received millions of dollars in federal child nutrition program funds.

The conspirators also submitted fake attendance rosters purporting to list the names of children who purportedly received their food at sites. The rosters were fraudulent and the names on them fake.

The defendant understands that Feeding Our Future personnel, including Aimee Bock and Abdikerm Eidleh, solicited kickback payments from participants in

the Federal Child Nutrition Program, including from the defendant's co-conspirators. The defendant made such payments.

Based on these fraudulent claims, Feeding Our Future paid out over $47 million in federal child nutrition program reimbursements for meals purportedly served to children at the sites run by the defendant and his co-conspirators. The conspirators created and used various entities to receive the proceeds of the fraud scheme. They used much of the money to purchase real estate in Minnesota and Ohio.

As alleged in Count 14 of the Indictment, on or about December 2, 2021, in furtherance of this scheme, and in the state and District of Minnesota, the defendant sent an email to Feeding Our Future with the subject line "All the companies." Attached to email were fraudulent meal counts and invoices for the fraudulent food companies he and his co-conspirators used as part of the scheme. The invoices claimed—falsely—that the companies had served more than 800,000 meals in the month of November 2021 and that they were entitled to more than $4.2 million in federal child nutrition program funds for meals purportedly served that month. The email traveled through servers located outside the state of Minnesota.

3. **Waiver of Pretrial Motions**. The defendant understands and agrees that he has certain rights to file pre-trial motions in this case. As part of the plea agreement, and based upon concessions of the United States within this plea agreement, the defendant knowingly, willingly, and voluntarily gives up the right to file any pre-trial motions in this case. The defendant agrees that, by pleading guilty, he is withdrawing any motions previously filed.

4. **Waiver of Constitutional Trial Rights.** The defendant understands that he has the right to go to trial. At trial, the defendant would be presumed innocent, have the right to trial by jury or, with the consent of the United States and of the Court, to trial by the Court, the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to subpoena witnesses to testify for the defense, the right to testify and present evidence, and the right to be protected from compelled self-incrimination. The defendant understands that he has the right to an attorney at every stage of these proceedings and, if necessary, one will be appointed to represent him. The defendant understands that he has the right to persist in a plea of not guilty and, if he does so, he would have the right to a public and speedy trial. By pleading guilty, the defendant knowingly, willingly, and voluntarily waives each of these trial rights, except the right to counsel. The defendant understands that a guilty plea is a complete and final admission of guilt and, if the Court accepts the guilty plea, the Court will adjudge the defendant guilty without a trial.

5. **Additional Consequences**. The defendant understands that as a result of this conviction, the defendant could experience additional collateral consequences, such as the loss of the right to carry firearms, the right to vote, and the right to hold public office. If the defendant is not a United States citizen, as a result of a plea of guilty, the defendant may be removed from the United States, denied citizenship, and denied admission to the United States in the future. The defendant has discussed with his attorney the punishments and consequences of pleading

guilty, understands that not all of the consequences can be predicted or foreseen, and still wants to plead guilty in this case.

6. **Statutory Penalties**. The parties agree that wire fraud, as charged in Count 14 of the Indictment, carries statutory penalties of:

    a.    a maximum term of imprisonment of 20 years in prison;

    b.    a supervised release term of up to three years;

    c.    a fine of up to $250,000, or twice the gross gain or loss from the offense, whichever is greater;

    d.    assessment to the defendant of the costs of prosecution as authorized by 28 U.S.C. §§ 1918(b) and 1920; and

    e.    a mandatory special assessment of $100 under 18 U.S.C. § 3013(a)(2)(A).

7. **Revocation of Supervised Release.** The defendant understands that if he were to violate any supervised release condition while on supervised release, the Court could revoke his supervised release, and the defendant could be sentenced to an additional term of imprisonment up to the statutory maximum set forth in 18 U.S.C. § 3583(e)(3). *See* U.S.S.G. §§ 7B1.4, 7B1.5. The defendant also understands that as part of any revocation, the Court may include a requirement that he be placed on an additional term of supervised release after imprisonment, as set forth in 18 U.S.C. § 3583(h).

8. **Guidelines Calculations**. The parties acknowledge that the defendant will be sentenced in accordance with 18 U.S.C. § 3551, *et seq*. Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The parties also acknowledge that the

Court will consider the United States Sentencing Guidelines in determining the appropriate sentence, and the parties stipulate to the following guideline calculations:

  a. Base Offense Level. The parties agree that the base offense level for wire fraud is 7. U.S.S.G. § 2B1.1(a)(1).

  b. Specific Offense Characteristics. The parties agree that the offense level is increased by 22 levels because the loss is more than $25 million, but not more than $65 million. U.S.S.G. § 2B1.1(b)(1)(L). The parties agree that the offense level should be increased by 2 levels because the offense involved a misrepresentation that the defendant was acting on behalf of a charitable or educational organization. U.S.S.G. § 2B1.1(b)(9)(A). The parties agree that the offense level should be increased 2 levels because the offense involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means. U.S.S.G. § 2B1.1(B)(10)(C). The parties agree that the offense level should be increased by 2 levels because the offense involved conduct described in 18 U.S.C. § 1040 (Fraud in Connection with a Major Disaster or Emergency Benefits). The parties agree that no other specific offense adjustments apply.

  c. Chapter 3 Adjustments. The parties agree that no Chapter 3 Adjustments apply.

  d. Acceptance of Responsibility. The government agrees to recommend that the defendant receive a 2-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). Whether this reduction will be imposed shall be determined by the Court in its discretion. However, the defendant understands and agrees that the government's recommendations are conditioned upon the following: (1) the defendant testifies truthfully during the change of plea and sentencing hearings; (2) the defendant provides full, complete and truthful information to the United States Probation Office in the pre-sentence investigation; and (3) the defendant engages in no conduct inconsistent with acceptance of responsibility before the time of sentencing, including frivolously denying facts in the Presentence Report. Nothing in this agreement limits the right of the government, pursuant to U.S.S.G. § 3E1.1 and/or § 3C1.1 to seek denial of a reduction for acceptance of responsibility or an

        enhancement for obstruction of justice should the defendant engage in any conduct inconsistent with acceptance of responsibility, including moving to withdraw his guilty plea after it is entered.

    e.    <u>Criminal History Category</u>. The parties believe that, at the time of sentencing, the defendant will fall into Criminal History Category I. U.S.S.G. § 4A1.1. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. The defendant's actual criminal history and related status will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing. The defendant understands that if the presentence investigation reveals any prior adult or juvenile sentence which should be included within his criminal history under the U.S. Sentencing Guidelines, the defendant will be sentenced based on his true criminal history category, and he will not be permitted to withdraw from this Plea Agreement. U.S.S.G. § 4A1.1.

    f.    <u>Zero-Point Offender Adjustment</u>. Because the defendant has zero criminal-history points and no disqualifying conduct, the parties agree the defendant qualifies for a 2-level adjustment under U.S.S.G. § 4C1.1.

    g.    <u>Guidelines Range</u>. If the adjusted offense level is 31, and the criminal history category is I, the Sentencing Guidelines range is 108 to 135 months of imprisonment.

    h.    <u>Fine Range</u>. If the adjusted offense level is 31, the Sentencing Guidelines fine range is $30,000 to $300,000. U.S.S.G. § 5E1.2(c)(3).

    i.    <u>Supervised Release</u>. The Sentencing Guidelines call for a term of supervised release of between one and three years. U.S.S.G. § 5D1.2(a)(2).

9.    **Discretion of the Court**. The foregoing stipulations are binding on the parties, but do not bind the Court. The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion. The Court may make its own determination regarding the

applicable guideline factors and the applicable criminal history category. The Court may also depart from the applicable Guidelines. If the Court determines that the applicable guideline calculations or the defendant's criminal history category are different from that stated above, such a determination shall not provide a basis for the parties to withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

10. **Agreements as to Sentencing Recommendation**. The parties are free to recommend whatever sentence they deem appropriate. The parties reserve the right to make a motion for departures from the applicable Guidelines range pursuant to 18 U.S.C. § 3553(a), to oppose any such motion made by the opposing party, and to argue for a sentence outside the applicable Guidelines range. If the Court does not accept the sentencing recommendation of the parties, the defendant will have no right to withdraw his guilty plea.

11. **Special Assessment**. The Sentencing Guidelines require payment of a special assessment in the amount of $100 for each felony count of which the defendant is convicted. U.S.S.G. § 5E1.3. The defendant agrees that the special assessment is due and payable at the time of sentencing.

12. **Restitution Agreement**. The defendant understands and agrees that the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, applies and that the Court is required to order the defendant to make restitution to the victims of his crime. The defendant understands and agrees the Court may order the defendant to make restitution to any victim of the scheme regardless of whether the victim was named

in the Indictment. The defendant agrees that he owes restitution jointly and severally in the amount of $44,061,053.

13. **Disclosure of Assets.** The defendant will fully and completely disclose to the United States Attorney's Office the existence and location of any assets in which the Defendant has any right, title, or interest, or over which the defendant exercises control, directly or indirectly, including those assets held by a spouse, nominee or other third party, or any business owned or controlled by the defendant. The defendant agrees to assist the United States in identifying, locating, returning, and transferring assets for use in payment of fines and/or forfeiture ordered by the Court. The Defendant agrees to complete a financial statement within two weeks of the entry of his guilty plea. The defendant further agrees to execute any releases that may be necessary for the United States to obtain information concerning the defendant's assets and expressly authorizes the United States to obtain a credit report on the defendant to evaluate his ability to satisfy financial obligations imposed by the Court. If requested by the United States, the defendant agrees to submit to one or more asset interviews or depositions under oath.

14. **Forfeiture.** The defendant agrees to forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real or personal, which constitutes or is derived from proceeds traceable to wire fraud, as charged in Count 14 of the Indictment, including but not limited to:

    a.     $309,993.51 seized from Bell Bank account No. xxxxxx2638 held in the name of Cosmopolitan Business Solutions d/b/a Safari Restaurant;

  b. $435,512.44 seized from Bell Bank account No. xxxxxxx5548 held in the name of 3017 LLC (Abdulkadir Nur Salah);

  c. $472,889.08 seized from Northeast Bank account number xxx5100 held in the name of 3017 LLC (Abdulkadir Salah);

  d. The real property located at 2722 Park Avenue South, Minneapolis, Minnesota;

  e. The real property located at 2742 Park Avenue South, Minneapolis, Minnesota;

  f. The real property located at 2435 Stelzer Road, Columbus, Ohio;

The defendant admits that this property is subject to forfeiture because it constitutes proceeds or is traceable to the wire fraud scheme alleged in Count 14 of the Indictment.

The Defendant consents to the entry of a money judgment forfeiture in the amount of $5,546,419, which represents the amount of proceeds obtained from the wire fraud scheme alleged in Count 14 of the Indictment. The defendant will receive a credit against the money judgment forfeiture for the net value of all property that is forfeited from him in this matter. The United States reserves the right to seek forfeiture of substitute assets and any additional directly forfeitable property.

In addition, the defendant abandons any interest he has in the following items of property, consents to the administrative forfeiture of them, waives his right to receive notice of their administrative forfeiture, consents to their destruction,

withdraws any claim he filed with respect to them, and withdraws any petition for remission or mitigation of their forfeiture:

    a.    Miscellaneous electronics seized from 2722 Park Avenue South, Minneapolis, Minnesota, the registered business location of Cosmopolitan Business Solutions;

    b.    Firearms seized from 2722 Park Avenue South, Minneapolis, Minnesota, the registered business location of Cosmopolitan Business Solutions—specifically, the Palmetto State Armory model PA-15 5.56 caliber AR-15 rifle, bearing serial number SCB003791 and the Anderson Manufacturing model AM-15 5.56-caliber AR-15 rifle, bearing serial number 20113938.

15.    **Waivers of Appeal and Collateral Attack.** The defendant hereby waives the right to appeal any non-jurisdictional issues. This appeal waiver includes but is not limited to the defendant's waiver of the right to appeal guilt or innocence, any issues relating to the change-of-plea proceedings, the sentence imposed, the Guidelines calculations, any restitution obligations, and the constitutionality of the statutes to which the defendant is pleading guilty. The parties agree, however, that excluded from this waiver is an appeal by defendant of the substantive reasonableness of a term of imprisonment above the high-end of the Guidelines range as determined by the district court.

The defendant also waives the right to collaterally attack his conviction and sentence under 28 U.S.C. § 2255 except based upon a claim of ineffective assistance of counsel. Further, this collateral-review waiver does not operate to waive a

collateral challenge under 28 U.S.C. § 2255 based on new legal principles enunciated in Supreme Court case law decided after the date of this Plea Agreement that are both substantive and have retroactive effect. For purposes of this provision, legal principles that are substantive and retroactive are those that narrow the reach of the offense of conviction and render the defendant's conduct non-criminal or that render the sentence imposed illegal.

The defendant has discussed these rights with the defendant's attorney. The defendant understands the rights being waived, and the defendant waives these rights knowingly, intelligently, and voluntarily.

The United States agrees to waive its right to appeal any sentence except the government may appeal the substantive reasonableness of a term of imprisonment below the low-end of the Guidelines range as determined by the district court.

16. **FOIA Requests.** The defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552, 552A.

17. **Complete Agreement.** This, along with any agreement signed by the parties before entry of plea, is the entire agreement and understanding between the United States and the defendant. By signing this plea agreement, the defendant acknowledges: (a) that the defendant has read the entire agreement and has reviewed every part of it with the defendant's counsel; (b) that the defendant fully understands this plea agreement; (c) that no promises, agreements, understandings, or conditions

have been made or entered into in connection with his decision to plead guilty, except those set forth in this plea agreement; (d) that the defendant is satisfied with the legal services and representation provided by defense counsel in connection with this plea agreement and matters related to it; (e) that the defendant has entered into this plea agreement freely, voluntarily, and knowingly; and (f) that the defendant's decision to plead guilty in accord with the terms and conditions of this plea agreement is made of the defendant's own free will.

Dated: 1/28/2025

LISA D. KIRKPATRICK
Acting United States Attorney

BY: JOSEPH H. THOMPSON
HARRY M. JACOBS
MATTHEW S. EBERT
DANIEL W. BOBIER
Assistant United States Attorneys

Dated: 01/28/2025

ABDULKADIR NUR SALAH
Defendant

Dated: 1/28/2025

SURYA SAXENA
NICHOLAS SCHEINER
Counsel for Defendant

13